IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DIESEL POWER SOURCE, L.L.C., and BRET PARK, an individual,<br><br>       **Plaintiff,**<br><br>v.<br><br>CRAZY CARL'S TURBOS INC., CARL TETREAULT,<br><br>       **Defendant.** | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:14-cv-00826-DN<br><br>District Judge David Nuffer |

Defendants Crazy Carl's Turbos Inc. ("CCT") and Carl Douglass ("Mr. Douglass")[1] (collectively "Tennessee Defendants") filed this motion to dismiss plaintiffs' complaint (the "Motion").[2] Tennessee Defendants argue that Plaintiffs' claims should be dismissed for insufficient process, lack of personal jurisdiction, and improper venue.[3] Plaintiffs, Diesel Power Source, L.L.C. ("DPS") and Bret Park ("Mr. Park") (collectively "Utah Plaintiffs") oppose the Motion.[4]

As discussed below, process was proper; Utah has specific personal jurisdiction over the Tennessee Defendants and Utah is a proper venue. Therefore, the Motion is DENIED.

---

[1] There is a discrepancy regarding the last name of Carl Douglass. The Utah Plaintiffs use the last name "Tetreault" throughout most of their Memorandum in Opposition to Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)-(3) ("Opposition Memorandum"), docket no. 12, filed December 23, 2014. Defendants, however, state the last name is "Douglass" even though it appears as "Douglas" in the Motion's title and elsewhere. Defendants Crazy Carl's Turbos and Carl Douglas's Motion to Dismiss Complaint Pursuant to 12(b)(2), 12(b)(3) at 2, n.2 ("Motion"), docket no. 11, filed December 1, 2014 (the spelling most frequently used in the Motion is "Douglass"). Therefore, though a few business documents, online profiles, and purchase invoices show Carl's last name to be Tetreault (Motion, Exhibits B, C, I, J, K, docket no. 12-1, filed December 23, 2014), this Memorandum Decision and Order will refer to him as "Mr. Douglass."

[2] Motion at 1.

[3] *Id.* at 3.

[4] *See* Opposition Memorandum at 1.

FACTUAL BACKGROUND ................................................................................................ 2
DISCUSSION ................................................................................................................... 4
    THE UTAH PLAINTIFFS' SERVICE OF PROCESS WAS PROPER ............................ 5
    UTAH HAS PERSONAL JURISDICTION OVER THE TENNESSEE DEFENDANTS 7
        General Jurisdiction is Not Present ...................................................................... 8
        Specific Jurisdiction is Present ............................................................................ 9
    VENUE IS PROPER IN UTAH ............................................................................... 18
CONCLUSION ............................................................................................................... 21
ORDER .......................................................................................................................... 21

## FACTUAL BACKGROUND

Mr. Park owns and operates Diesel Power Source, L.L.C. in Utah.[5] Mr. Douglass owns and operates a competing business, called Crazy Carl's Turbos, in Tennessee.[6] Both DPS and CCT make and sell diesel products and services.[7]

This dispute arises out of defamatory comments and photographs that Mr. Douglass allegedly posted on the Internet about DPS's products and services.[8] The messages and photographs that Mr. Douglass allegedly posted state that DPS's products are of low quality, deficient, do not perform well, and have an insufficient warranty.[9] Mr. Douglass allegedly posted these comments and photographs on various blogs, forums, message boards, and personal messages,[10] after purchasing products from DPS.[11]

According to Mr. Douglass's affidavit, submitted with the Tennessee Defendants' Motion, Mr. Douglass has never personally conducted business, contracted to supply services, or

---

[5] Complaint, ¶¶ 1-2, docket no. 4-1, filed November 12, 2014.

[6] *Id.* at ¶¶ 3-4.

[7] *Id.* at ¶ 18.

[8] *Id.* at ¶¶ 29, 46, 48, 50-53, 64, 73, 89, 97, 104.

[9] *Id.* at ¶¶ 29, 46, 48, 50-53, 55, 64, 73, 89, 97, 104.

[10] *Id.* at ¶¶ 29, 46, 48, 50-53, 64, 73, 89, 97, 104.

[11] Opposition Memorandum at 13-14.

caused any injury within the state of Utah.[12] Additionally, Mr. Douglass asserts he has not "personally or outside the scope as an agent for Crazy Carl's Turbos, Inc., ever hired other persons or agents to solicit, market, target, email, call, text, instant message, fax or otherwise make contact with residents, individual or commercial, of the State of Utah."[13] Mr. Douglass further asserts that any contact he may have had with Utah residents "has been at [the Utah residents'] instigation and effort to reach [Mr. Douglass] in Tennessee or as an agent for Crazy Carl's Turbos, Inc.," as he has not directed contact to Utah.[14] Mr. Douglass also states that "[n]either [he] nor Crazy Carl's Turbos Inc. have posted any comments on any forums, websites, or message boards hosted or maintained in Utah."[15] Finally, Mr. Douglass submits that he and CCT would face financial ruin if forced to defend a lawsuit in Utah.[16]

In contrast, Utah Plaintiffs allege that the Tennessee Defendants solicit business from all regions including Utah,[17] advertise free shipping to the lower 48 states, and enable purchasers to select Utah from a toggle menu for shipping purposes.[18] Additionally, Mr. Park alleges that Tennessee Defendants transacted business in Utah on multiple occasions,[19] including making three separate purchases from DPS,[20] which DPS shipped directly to Mr. Douglass's address in

---

[12] Affidavit of Carl Douglass, ¶¶ 3-5, docket no. 11-1, filed December 1, 2014.

[13] *Id.* at ¶ 11.

[14] *Id.* at ¶ 16.

[15] *Id.* at ¶ 15.

[16] *Id.* at ¶ 17.

[17] Complaint at ¶ 11.

[18] Opposition Memorandum at ¶¶ 30-40.

[19] Complaint at ¶ 12.

[20] Affidavit of Bret Park, ¶¶18-20, docket no. 13, filed on December 23, 2014; Opposition Memorandum at ¶¶ 24, 26, 28.

Tennessee.[21] According to Mr. Park, these purchases resulted in the Tennessee Defendants' defamatory comments.[22]

Mr. Park asserts that numerous potential Utah customers have called DPS to inquire about Mr. Douglass' allegations,[23] have questioned the quality of DPS's product and warranty,[24] and have returned DPS products for a refund without opening the package because of Mr. Douglass's statements.[25] Mr. Park submits that Mr. Douglass's actions have caused severe injury to both Mr. Park and DPS.[26]

## DISCUSSION

When a motion to dismiss is raised by a defendant early on in the proceedings, courts are to "tak[e] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff['s] complaint,"[27] making all reasonable inferences in the plaintiff's favor.[28] Ultimately, "[t]he plaintiff bears the burden of establishing personal jurisdiction, but . . . early on in litigation . . . that burden can be met by a prima facie showing."[29] Moreover, while "well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit," all factual disputes should be resolved in favor of the plaintiff.[30]

---

[21] Affidavit of Bret Park at ¶ 19; Opposition Memorandum at ¶¶ 25, 27, 29.

[22] Opposition Memorandum at 13-14.

[23] Affidavit of Bret Park at ¶ 13.

[24] *Id.* at ¶ 14.

[25] *Id.* at ¶ 15.

[26] *Id.* at ¶ 24.

[27] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (second alteration in original).

[28] *Weise v. Casper*, 507 F.3d 1260, 1271 (10th Cir. 2007) (citations omitted).

[29] *Shrader*, 633 F.3d at 1239.

[30] *Id.* at 1248.

Here, the Utah Plaintiffs made a prima facie jurisdictional showing by stating their version of the facts in their Complaint.[31] The Tennessee Defendants then refuted those facts in their Motion and Mr. Douglass's Affidavit.[32] In response to the Tennessee Defendants' Motion, the Utah Plaintiffs reasserted their version of the facts in their Opposition Memorandum[33] and Mr. Park's accompanying Affidavit.[34] Therefore, all inferences will be drawn, and factual disputes will be resolved, in favor of the Utah Plaintiffs.

Each of the Tennessee Defendants' arguments will be addressed beginning with insufficient process. Personal jurisdiction will then be addressed, followed by venue. For the reasons set forth in more detail below, the Utah Plaintiffs' process and service of process is proper, Utah has personal jurisdiction over all parties in this case, and venue is proper in Utah.

## THE UTAH PLAINTIFFS' PROCESS AND SERVICE OF PROCESS WAS PROPER

Tennessee Defendants briefly argue on page three of their Motion that the Utah Plaintiffs' process was deficient.[35] Because the Utah Plaintiffs initially filed this action in a Utah state court the Utah Rules of Civil Procedure govern the content and service of the summons. The Federal Rules of Civil Procedure make insufficient process a valid basis for dismissing a complaint, and govern this motion.[36]

Rule 4 of Utah's Rules of Civil Procedure, establishing the required content of the summons, states:

> The summons shall contain the name of the court, the address of the court, the names of the parties to the action, and the county in which it is brought. It shall be

---

[31] Complaint at ¶¶ 11-13, 29-34.

[32] Motion at 3-5; *see generally* Affidavit of Carl Douglass.

[33] Opposition Memorandum at 2-7.

[34] *See generally* Affidavit of Bret Park.

[35] Motion at 3.

[36] Fed. R. Civ. P. 12(b)(4).

directed to the defendant, state the name, address and telephone number of the plaintiff's attorney, if any, and otherwise the plaintiff's address and telephone number. It shall state the time within which the defendant is required to answer the complaint in writing, and shall notify the defendant that in case of failure to do so, judgment by default will be rendered against the defendant. It shall state either that the complaint is on file with the court or that the complaint will be filed with the court within ten days of service.[37]

Regarding the method of service, Utah R. Civ. P. 4(d) provides:

Unless waived in writing, service of the summons and complaint shall be by one of the following methods: (d)(1) … in any state or judicial district of the United States by the sheriff or constable or by the deputy of either, by a United States Marshal or by the marshal's deputy, or by any other person 18 years of age or older at the time of service and not a party to the action or a party's attorney. (d)(1)(A) Upon any individual … by delivering a copy of the summons and the complaint to the individual personally … (d)(1)(E) Upon any corporation not herein otherwise provided for, upon a partnership or upon an unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or other agent authorized by appointment or by law to receive service of process.[38]

The Tennessee Defendants provide no support for the allegation that they did not receive process or that the process was insufficient.[39] The Utah Plaintiffs, however, have shown that on October 18, 2014, Constable Larry Crabtree served Carl Douglass, personally, and Diana Douglass, as an agent of CCT, with copies of the Summons and Complaint.[40] Complying with Rule 4, the Summons included the name and address of the court, the names of the parties, the name and address of DPS's attorney, the time in which CCT was to respond, and the penalty for failing to respond.[41] The Summons and Complaint were served in Clarkrange, Tennessee,[42] as

---

[37] Utah R. Civ. P. 4(c)(1).

[38] *Id.* at 4(d); 4(d)(1); 4(d)(1)(A); and 4(d)(1)(E).

[39] *See* Motion at 2-3 (stating constable did not "serve a Summons" and that Plaintiffs' lawsuit should be dismissed for "insufficiency of process").

[40] Proof of Service at 2, docket no. 4-4, filed November 12, 2014.

[41] Exhibits A & B to Proof of Service.

[42] Proof of Service at 2.

permitted by Utah's rules.[43] Therefore, the Utah Plaintiffs followed Utah's rules in form of the summons and in service of process.[44] The Tennessee Defendants' insufficient process argument fails.

### UTAH HAS PERSONAL JURISDICTION OVER THE TENNESSEE DEFENDANTS

The Tennessee Defendants' primary argument supporting their Motion is that Utah has no personal jurisdiction over them.[45] In determining personal jurisdiction in diversity cases, Federal Rule of Civil Procedure 4(k)(1)(A) requires federal district courts to "apply the law of the state in which the district court sits."[46] Accordingly, Utah law determines personal jurisdiction.

Personal jurisdiction over a defendant can be either general or specific.[47] General jurisdiction gives a court authority over a defendant "without regard to the subject of the claim asserted" as long as the defendant has engaged in "substantial and continuous local activity in the forum state."[48] In contrast, specific jurisdiction is limited to the "claims arising out of the particular activities of the defendant in the forum state."[49]

In the Motion, the Tennessee Defendants discuss CCT and Mr. Douglass collectively, not as a separate individual and entity.[50] Only in their Reply Brief do the Tennessee Defendants raise

---

[43] Utah R. Civ. P. 4(d)(1).

[44] Summons, docket no. 4-4, filed November 12, 2014; Certificate of Service, docket no. 4-3, filed November 12, 2014; Proof of Service.

[45] Motion at 5-6.

[46] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

[47] *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992).

[48] *Pohl, Inc. of America v. Webelhuth*, 201 P.3d 944, 949 (Utah 2008) (internal quotation marks and citation omitted).

[49] *Id.*

[50] Complaint at 1.

the corporate veil as a basis for dismissing Mr. Douglass.[51] Courts are not obligated to parcel out individual defendants in a personal jurisdiction analysis when the moving party does not separate them in the Motion.[52] Therefore, CCT and Mr. Douglass are analyzed together.

**General Jurisdiction is Not Present**

The Tennessee Defendants' argue that Utah does not have general jurisdiction over them because neither CCT nor Mr. Douglass conducts "substantial and continuous local activity" within the state.[53] Indeed, Mr. Douglass's affidavit states that he has never personally conducted business transactions or contracted to supply services in Utah.[54] Mr. Douglass likewise denies in his affidavit that CCT has ever "directed electronic, paper, or any other medium of advertisement . . . to Utah;" "hired other persons or agents to solicit, market, target, email, call, text, instant message, fax, or otherwise make contact with residents, individual or commercial, of the State of Utah;" or opened any "offices or locations in Utah."[55] Although some of these facts are controverted by Mr. Park's affidavit,[56] and factual disputes are to be interpreted liberally in favor of the Plaintiffs,[57] Plaintiffs do not argue that Utah has general personal jurisdiction over either CCT or Mr. Douglass.

Even when construing the facts in the light most favorable to the Utah Plaintiffs, the Tennessee Defendants' collective contacts with Utah are limited to a few purchases, one phone

---

[51] Defendants Crazy Carl's Turbos and Carl Douglas' Reply to Plaintiffs' Response to Motion to Dismiss at 1, docket no. 14, filed January 7, 2015.

[52] *Forte Supply, LLC v. Mojo Frozen Yogurt, LLC*, 2013 U.S. Dist. LEXIS 140688, at *6, 2013 WL 5477165, at *2 (D. Colo.) (citing *Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. Appx. 86, 2012 WL 2855777, at *4 (10th Cir. July 12, 2012).

[53] Motion at 6.

[54] Affidavit of Carl Douglass at ¶¶ 3-4.

[55] Affidavit of Carl Douglass at ¶¶ 10-13.

[56] Affidavit of Bret Park at ¶¶ 18-23.

[57] *Shrader*, 633 F.3d at 1239.

call, and a few other unspecified interactions with Utah residents.[58] These types of contacts do not rise to the level required for general jurisdiction. Therefore, general personal jurisdiction over the Tennessee Defendants does not exist.

**Specific Jurisdiction is Present**

The Tennessee Defendants also argue that Utah does not have specific jurisdiction over them. A court cannot exercise specific jurisdiction over a defendant unless Utah's long-arm statute covers the defendant's behavior; the plaintiff's injury arises out of defendant's behavior; and exercising specific jurisdiction would satisfy the defendant's right to due process.[59]

"[T]o ensure maximum protection to citizens of this state, [Utah's long-arm statute] should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[60] Since the due process analysis controls the outcome of the specific jurisdiction determination,[61] only the due process requirement will be addressed.

To satisfy due process, a plaintiff must show that the defendant has "[1] minimum contacts with the forum state, such that having to defend a lawsuit there [2] would not 'offend traditional notions of fair play and substantial justice.'"[62]

**(1)     The Tennessee Defendants Have "Minimum Contacts" with Utah**

"Minimum contacts" requires the plaintiff to show "that the out-of-state defendant . . . purposefully directed its activities at residents of the forum state," *and* "that the plaintiff's

---

[58] Affidavit of Bret Park at ¶¶ 18-23.

[59] *See Fenn v. Mleads Enterprises, Inc.*, 137 P.3d 706, 710 (Utah 2006).

[60] Utah Code Ann. § 78B-3-201(3) (West 2014).

[61] *State ex rel. W.A.*, 63 P.3d 607, 612 (Utah 2002).

[62] *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

injuries . . . 'arise out of' defendant's forum-related activities."[63] The Utah Plaintiffs argue that

the Tennessee Defendants established minimum contacts with Utah three different ways: (a)

making defendants' website available for Utah customers;[64] (b) posting comments on message

boards about a Utah business;[65] and (c) conducting business activity in Utah.[66] Each of these

bases is discussed in turn to determine whether the Tennessee Defendants "purposefully directed

its activities at residents of [Utah]" *and* that the alleged injuries "arise out of" those activities.

### a)   *CCT's Website Does Not Establish "Minimum Contacts"*

The Utah Plaintiffs argue that CCT's website satisfies the minimum contacts

requirement.[67] This is incorrect.

Even assuming that the Tennessee Defendants' website was "purposefully directed" at

Utah (which has not been established, but for purposes of argument it will be assumed), the Utah

Plaintiffs fail to allege how their claims against the Tennessee Defendants "arise out of" CCT's

interactive website. The Utah Plaintiffs' claims in the Complaint rely on allegations of Mr.

Douglass's *defamatory comments*, not CCT's website, which is set up to sell CCT's products.

The difference is significant.

In *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,[68] the Tenth Circuit articulated two

tests to measure whether a plaintiff's claims "arise out of" a defendant's behavior.[69] Under the

"but for" test, "any event in the causal chain leading to the plaintiff's injury is sufficiently related

---

[63] *Shrader*, 633 F.3d at 1239 (internal citations omitted).

[64] Opposition Memorandum at 9-11.

[65] *Id.* at 11-12.

[66] *Id.* at 12-13.

[67] Opposition Memorandum at 9-11.

[68] 514 F.3d 1063 (10th Cir. 2008). As recently as 2013, the Tenth Circuit had not made an election between the tests. We have so far refused to choose one test over the other . . ." *Newsome v. Gallacher*, 722 F.3d 1257, 1270 (10th Cir. 2013)

[69] *Id.* at 1079.

to the claim to support the exercise of specific jurisdiction."[70] The second test, or "proximate

cause" test, is more restrictive and "calls for courts to 'examine[s] whether any of the defendant's

contacts with the forum are relevant to the merits of the plaintiff's claim.'"[71] The facts in

*Dudnikov* did not require the Tenth Circuit to endorse one test over the other. Instead, the court

determined that the defendants' behavior in that case satisfied the "arising out of" requirement

under both tests.[72] Here, CCT's website fails to satisfy either test.

      Under the "but for" test, *the Tennessee Defendants' website* was not an "event in the

causal chain leading to" Mr. Park's or DPS's alleged injuries. Likewise, under the more

restrictive "proximate cause" test, the website, even with its various purchasing options and

interactive design, in not relevant to Mr. Park's or DPS's alleged injuries. The Utah Plaintiffs'

arguments that this court may exercise personal jurisdiction over the Tennessee Defendants

based on contacts created by a website unrelated to the alleged injuries conflate general and

specific personal jurisdiction. The limited contacts the Defendants' website creates with Utah

may be sufficient to give Utah specific jurisdiction over defendants in an injury arising from that

website, but not for unrelated injuries. For the above reasons, CCT's website does not meet the

"arise out of" element of "minimum contacts." As a result, CCT's website does not satisfy the

"minimum contacts" requirement of due process.

      **b)**      ***The Defamatory Comments Alone Do Not Satisfy "Minimum Contacts"***

      Second, the Utah Plaintiffs allege that the Tennessee Defendants' comments and postings

satisfy the "minimum contacts" requirement based on the "effects test" established in *Calder v.*

---

[70] *Id.* at 1078.

[71] *Id.* (citations omitted).

[72] *Id.* at 1079.

*Jones*.[73] Purposeful direction exists when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."[74] This requirement protects defendants from "being haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."[75] While the "effects test" is the proper test for this case, the Utah Plaintiffs' conclusion that "minimum contacts" is established solely from postings on a message board is incorrect.

In *Calder v. Jones*,[76] the United States Supreme Court determined that California properly exercised specific jurisdiction over Florida defendants who purposefully directed a slanderous magazine article about a California actress into California. Establishing the "effects test" as a means to determine purposeful direction, the Supreme Court reasoned that personal jurisdiction was proper because (1) the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California;" (2) "they knew [their article] would have a potentially devastating impact upon [the actress];" and (3) "they knew that the brunt of that injury would be felt by [actress] in the State in which she lives and works."[77] The court concluded that, based on these elements, the defendants could "reasonably anticipate being haled into [a California] court" to answer for the truth of their article.[78] Thus their behavior satisfied the purposeful direction requirement.

---

[73] Opposition Memorandum at 11-12 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

[74] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citations omitted).

[75] *Id.* at 475

[76] 465 U.S. 783 (1984).

[77] *Id.* at 789-90.

[78] *Id.*

In the 2011 case of *Shrader v. Biddinger*,[79] the Tenth Circuit applied the "effects test" to circumstances analogous to those here, and found that the defendant did not have minimum contacts.[80] In *Shrader*, an allegedly defamatory email was sent to an Oklahoma author, and subsequently posted to an online forum.[81] There, the Tenth Circuit stated, "it is necessary to adapt the analysis of personal jurisdiction to [Internet activity] by placing emphasis on the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there."[82] The *Shrader* court reasoned:

> If we were to conclude as a general principle that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed, then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist.[83]

The Tenth Circuit further declared that "posting allegedly defamatory comments or information on an internet site *does not, without more, subject the poster to personal jurisdiction wherever the posting could be read* (and the subject of the posting may reside)."[84] There must also be "indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring *primarily* or *particularly* in the forum state."[85] Ultimately, the *Shrader* court found no purposeful direction because neither sending the email to the Oklahoma author in the forum state nor posting that email on public message boards rose to the necessary targeting to meet the "effects test."[86]

---

[79] 633 F.3d 1235.

[80] *See id.* at 1248.

[81] *Id.* at 1238.

[82] *Id.* at 1240.

[83] *Id.* (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir.2002)).

[84] *Shrader,* 633 F.3d at 1240

[85] *Id.* at 1241 (emphasis added).

[86] *Id.*

Mr. Douglass's act of posting negative comments about DPS on the online message boards is very similar to the actions of the defendants in *Shrader*.[87] Just as one of the defendants in *Shrader* posted comments about the author to an online forum, with neither the comments nor the forum having any connection to Oklahoma,[88] neither Mr. Douglass's comments nor the message board on which they were posted, *without more*, have a sufficient connection to Utah. The *Shrader* court specifically stated that "merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed."[89]

Moreover, contrary to the Utah Plaintiffs' argument, the Tennessee Defendants' actions here are different from the defendants' behavior in *Calder*. In *Calder*, the defendants' wrote an article about a California actress, whose fame was centered in California, in a publication that was most widely circulated in California, with most of the damage likely to occur in California.[90] Here, though the allegedly defamatory comments were about a Utah business, they were posted to an online forum with no specific connection to Utah, to a non-specific audience located throughout the world.

*Shrader* established that "defamatory postings may give rise to personal jurisdiction if they are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message."[91] Here, as noted above, the Tennessee Defendants' defamatory comments were addressed to a general internet audience, not one based in Utah. Accordingly, Mr. Douglass's postings, *by themselves*, do not pass the "effects test," and cannot satisfy the

---

[87] *Id.* at 1238.

[88] *Id.* at 1241.

[89] *Id.* at 1244.

[90] *Calder*, 465 U.S. at 788-89.

[91] *Shrader*, 633 F.3d at 1243.

"purposeful direction" element.[92] As Mr. Douglass's postings alone do not satisfy the purposeful direction element, it is unnecessary to discuss whether the Utah Plaintiffs' alleged injuries "arose out of" those comments. Without purposeful direction, the forum comments and postings alone do not establish "minimum contacts" with Utah.

### c)   *Tennessee Defendants' Business Activities with Utah Establish Minimum Contacts*

Finally, the Utah Plaintiffs argue that "Defendant's actions through purchasing Plaintiff's products . . . has [sic] established sufficient minimum contacts to allow this Court to exercise personal jurisdiction over the Defendant."[93] In this argument the Utah Plaintiffs are correct. The Tennessee Defendants' purchases of DPS's products satisfy the "minimum contacts" requirement because the Tennessee Plaintiffs voluntarily reached out to DPS, a Utah company, to enter into business transactions, and those transactions were at least one reason for the alleged defamatory comments that gave rise to the Utah Plaintiffs' alleged injuries in this action.

First, the Tennessee Defendants purposefully directed business activity at Utah by purchasing DPS products. The Utah Plaintiffs allege facts showing this element in both their Opposition Memorandum and their Complaint.[94] For example, i, the Utah Plaintiffs allege that Mr. Douglass purchased products from the Utah Plaintiffs on April 26, July 9, and July 23 of 2012.[95] Likewise, in their Complaint, the Utah Plaintiffs allege that the Tennessee Defendants "purchased from Plaintiff and knew that Plaintiff's products are much more reliable than [Mr.

---

[92] However, when combined with the fact that business transactions were purposefully directed at Utah, the defamatory statements based on those transactions satisfy "minimum contacts" here. *See* Section (1)(c) herein.

[93] Opposition Memorandum at 12-13.

[94] Opposition Memorandum at ¶¶ 24-29; Exhibits I, J, and K of Opposition Memorandum, docket no. 12-1, filed December 23, 2014; Complaint at ¶¶ 52, 54.

[95] Opposition Memorandum at ¶¶ 24-29; Exhibits I, J, and K of Opposition Memorandum.

Douglass] portrays."[96] Taking the Utah Plaintiffs' allegations as true, and drawing reasonable inferences in their favor, the purchase of products was an intentional step by the Tennessee Defendants to transact business with the Utah Plaintiffs in Utah. These business transactions satisfy the purposeful direction element.

Second, the Utah Plaintiffs' alleged injuries also arise out of the Tennessee Defendants' purchases of DPS products. Under the "but for" test, the Tennessee Defendants' activity need only occur somewhere in the causal chain that leads to the Utah Plaintiffs' alleged injuries.[97] According to the Utah Plaintiffs, the Tennessee Defendants' purchases resulted in their defamatory comments, which caused the Utah Plaintiffs' alleged injuries.[98] The Complaint alleges that "[the Tennessee Defendants] posted pictures of turbo kits manufactured by [Utah Plaintiffs]."[99] Likewise, the Utah Plaintiffs state that "[b]y purchasing the product, [the Tennessee Defendants] were able to misrepresent Plaintiff's [sic] products and claim to have first hand experience on the shortcomings of Plaintiff's [sic] products and warranty."[100] Tennessee Defendants' purchases also satisfy the more restrictive "proximate cause" test, which requires the contacts to be "relevant to the merits of the plaintiff's claim,"[101] because the purchases are just one step removed from the Utah Plaintiffs' injuries and are directly connected to the allegedly defamatory comments and postings. Thus, the Tennessee Defendants' purchases of DPS products satisfy the "arising out of" element of minimum contacts.

---

[96] Complaint at ¶¶ 52, 54.

[97] *Dudnikov*, 514 F.3d at 1078.

[98] Complaint at ¶¶ 46-47.

[99] *Id.*

[100] Opposition Memorandum at 13-14.

[101] *Dudnikov*, 514 F.3d at 1078.

Accepting the Utah Plaintiffs' allegations as true, and construing the factual disputes in the light most favorable to them, the Tennessee Defendants behavior satisfies the minimum contacts requirement because they purposefully directed business activity towards Utah by purchasing DPS products, and the Utah Plaintiffs' alleged injuries arose out of comments and postings caused by those purchases.

### (2)     Exercising Jurisdiction over the Tennessee Defendants Does Not Offend Traditional Notions of Fair Play and Substantial Justice

Having determined that the Tennessee Defendants' business transactions with the Utah Plaintiffs established minimum contacts, it is necessary to address whether exercising specific jurisdiction over the Tennessee Defendants would otherwise offend traditional notions of fair play and substantial justice. For the reasons set forth below, it would not.

In conducting this analysis, courts traditionally consider

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.[102]

Moreover, when defendants purposefully direct activities towards a forum state, they "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[103]

Due to the distance between Tennessee and Utah, one of the parties here will unavoidably bear a burden in litigating this dispute. Additionally, taking the Utah Plaintiffs' allegations as true, the Tennessee Defendants provided Utah with an interest in resolving this dispute by directing their business activity toward Utah and making defamatory comments about a Utah

---

[102] *Id.* at 1080 (internal citations omitted).

[103] *Burger King Corp.*, 471 U.S. at 477.

business. It is in the Utah Plaintiffs' best interest to require the Tennessee Defendants to come to Utah "to answer for the truth of the statements made."[104] This is not just a situation of posting comments on a neutral message board. Rather, the sequence of events, as alleged in the Utah plaintiffs' Complaint and Opposition Memorandum, shows a calculated plan intended to damage a Utah business. Moreover, the Tennessee Defendants fail to identify any additional considerations that would "render jurisdiction unreasonable."[105] Thus, traditional notions of fair play and substantial justice are not offended.

Due process is satisfied here because the Tennessee Defendants established minimum contacts with Utah and jurisdiction does not otherwise offend traditional notions of fair play and substantial justice.

## VENUE IS PROPER IN UTAH

The Tennessee Defendants' final point in their Motion to Dismiss for Lack of Jurisdiction is improper venue.[106] However, they provide no argument. Their references to venue are limited to a few places in their introduction[107] and once in their conclusion.[108] The Tennessee Defendants appear to consider "personal jurisdiction" and "venue" as synonyms, based on their omission of a separate "venue" discussion.

The Utah Plaintiffs do no better, mentioning venue only in their concluding paragraph.[109] While closely related, personal jurisdiction and venue are two distinct concepts. It is true that a

---

[104] *Calder*, 465 U.S. at 790.

[105] Motion at 7-8.

[106] *Id.* at 1.

[107] *Id.* at 1-3.

[108] *Id.* at 13.

[109] Opposition Memorandum at 14.

court must have personal jurisdiction if it is to be a proper venue, but occasionally a court may have personal jurisdiction and still be an improper venue.[110]

> In federal courts:
>
> A civil action may be brought in –
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[111]

For venue to be proper, it must fit within one of these three scenarios. A venue does not have to be the "best" venue to be a "proper" venue.[112] Moreover, "Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other. Thus, in construing venue statutes it is reasonable to prefer the construction that avoids leaving such a gap."[113]

Subsection (2) provides that venue is proper in the judicial district where "a substantial part of the events or omissions giving rise to the claim occurred."[114] But where do actions actually "occur" when they are executed on the Internet?

This question was answered by the District of Colorado, in *Forte Supply, LLC v. Mojo Frozen Yogurt, LLC*.[115] There, a Colorado seller of yogurt machines sued a New Jersey store, as

---

[110] 28 U.S.C. § 1391(b) (2015).

[111] *Id.*

[112] *KEBD Enterprises, LLC v. Hider*, 2009 U.S. Dist. LEXIS 49163, at *7, 2009 WL 1504748, at *2, *6 (citing *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 866-67 (2nd Cir. 1992)).

[113] *Monument Builders of Greater Kansas City, Inc. v. American Cemetary Ass'n*, 891 F.2d 1473 (10th Cir. 1989) (quoting *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 710, n. 8, (1972) (additional citations omitted).

[114] 28 U.S.C. § 1391(b)(2).

[115] *Forte Supply, LLC*, 2013 U.S. Dist. LEXIS 140688.

well as its owner, after the New Jersey store made defamatory comments about the Colorado

seller's machines.[116] The New Jersey store had purchased four machines from the Colorado

seller and, after being disappointed with the machines' quality, posted negative comments on the

"Yelp" and the "BBB" websites, among other places.[117] The New Jersey store owner was

physically in New Jersey, and not in Colorado, when it engaged in its allegedly defamatory

conduct, so the store owner argued that a substantial number of the events giving rise to the

action occurred in New Jersey, making Colorado an improper venue.[118] The District of Colorado

disagreed, reasoning that

> where the machines malfunctioned does not serve as a basis for Plaintiffs' claims.
> Instead . . . it is Defendants' alleged intentional actions in reaching into Colorado
> . . . which serve as the bases for Plaintiffs' claims. . . . [T]he fact that Defendants'
> alleged acts physically occurred in New Jersey does not, in the context of this
> case, support a finding that such actions are not significantly connected to
> Colorado.[119]

The District of Colorado's reasoning in *Forte Supply* is persuasive, and it is adopted in this case.

Even though some of the Tennessee Defendants' actions may have physically occurred in

Tennessee, a substantial part of the events occurred in Utah, where the Tennessee Defendants

intentionally reached to purchase Plaintiffs' products and then posted allegedly defamatory

remarks about those products in an effort to do harm to the Utah business, knowing its location

in Utah. Under *Forte Supply*, acts that are physically performed on the Internet can "occur" in

the forum state in order to establish proper venue. Therefore, venue is proper in Utah.

---

[116] *Id.* at *3-4.

[117] *Id.*

[118] *Id.* at *20

[119] *Id.* at *20-21.

**CONCLUSION**

The Utah Plaintiffs properly served process on the Tennessee Defendants, Utah has

specific personal jurisdiction over the Tennessee Defendants, and Utah is a proper venue for this

dispute. Therefore,

**ORDER**

IT IS HEREBY ORDERED that Defendants' Motion[120] is DENIED.

Dated March 10, 2015.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[120] Defendants Crazy Carl's Turbos and Carl Douglas' Motion to Dismiss Complaint Pursuant to 12(b)(2), 12(b)(3),
docket no. 11, filed December 1, 2014.